Good morning and may it please the Court, I'm Peter Henderson here on behalf of Jimmy Davis. The magistrate judge in this case made two big mistakes. The first was using the wrong legal standard to evaluate actual innocence. The magistrate judge used the Jackson sufficiency of the evidence standard to conclude that the jury could find Mr. Davis guilty of aiding and abetting the 924c charge, when in fact the schlup standard is would a reasonable jury, in light of this new information, in light of how we now understand the law, would they find beyond a reasonable doubt that he had advanced knowledge of the firearm. The other mistake was that the magistrate judge didn't rely on the transcript of what actually happened at the jury trial, which makes it a little bit harder to make a determination as to what the jury would do. Instead, the magistrate judge relied on the Tenth Circuit's summary of the evidence. And that summary had a few defects. The main defects were in how involved Mr. Davis was in the initial parts of the robbery. What the Tenth Circuit said, what the governments repeated, what the magistrate found, was that Mr. Davis not only approached the teller and demanded money, but he then escorted the teller to the vault, sort of pushed all the tellers in the vault, and then closed the vault with Mr. Hassler. And that's contradicted by the trial transcript. In fact, what Ms. Ashenfelter and Ms. Anderson testified to at trial was that was all at the direction of Mr. Hassler, who had a gun and was using the gun to coerce the tellers into the vault, and then he alone closed the vault. The picture that we get through the trial transcripts rather than the Tenth Circuit's summary is one where Mr. Hassler, a 6'4", 240-pound man, is directing this bank robbery. And he has persuaded his friend, 5'6", less than 240 pounds, Mr. Davis, into helping him out. Mr. Hassler, of course, was on parole for murder. He had a firearm, and he was directing this bank robbery. The standard of review really is important. The government points to some facts to suggest, well, maybe a jury could find that Mr. Davis had advanced knowledge of this firearm. There's no evidence. What kind of pistol did he have, Hassler? You know, Your Honor, I'm not sure about that. It's a handgun, as you identified. It had a brown or a black handle, but I'm not clear on the details of what type of handgun. And so where did he have it? Did he have it in a pocket or in his belt, or did he have a holster? No, he brandished it. No, no, no, but he had it on his person before he brandished it. There's no evidence of... He didn't walk around carrying a gun, you see. Right, right. There's no evidence of whether it was concealed on his person or whether he had it in a holster. The only evidence, we sort of start the story at trial with him brandishing the firearm. They did later find the firearm in a plastic bag. I understand. Two guns in the car. Two guns, right. But again, the evidence at trial was that Mr. Davis did not have a gun. And so... Right, but they're caught in the car with two guns afterwards, right? Right, but you would expect, if this is going to be an armed robbery from the outset and there are two guns, that Mr. Davis would have had a gun. Well, I don't know, maybe he's the front guy, you know, get the tellers off guard before the guy with the gun then starts the robbery. Right, but I think that the more persuasive way to look at it is to say, if there were two guns available to these two men and they had planned in advance that this was going to be an armed robbery, it doesn't make sense for one of them to be unarmed and the other to only be carrying one firearm. If the point of the firearms is to coerce the tellers into handing over money, then they ought to both be armed. No, but it worked, the bank robbery, one of them armed, one of them not armed. You say, so they, say Haslip had two guns, there were two guns in the car, so was Davis in the car? He was in the car later, and that's a point that the government brings up, is they did make a getaway together in a stolen car that was then discovered after a chase and sort of crashed. But you're saying they didn't go together to the bank? We don't know what happened, we don't know how they got to the bank. I think it's a fair inference to say they arrived in the car together, but we don't know what they discussed, we don't know whether a firearm was displayed, we don't know any of that. But the government uses that to say, well, because they got away together, we know that they must have planned this in advance, they must have known this was going to be an armed robbery. But those are very similar to the facts in Rosemond. In Rosemond, the question was, did this guy have advanced knowledge that a firearm would be used? But the facts in that case were, after the firearm was displayed, he... Well, if Haslip had two guns in the car, wouldn't Davis have known? Where would he have the two guns, one in each pocket? I don't... There's no evidence on that. Was he carrying them in a satchel or something? We don't know. I mean, that's... You know, it's very easy to conceal a firearm. He's a big guy, you know, if he's wearing oversized clothing or... It's not that easy to conceal two. Well... Right. What time of year is this? I believe this was, well, gosh, I don't want to guess. My impression from it is that this was in the summer or so. They were discovered outside in the field. I can look that up. I'm sorry, the guns were discovered outside? No. Mr. Davis and Mr. Haslip were outside. Oh. Yeah. I can look up the... Do you know where in the car the two guns were found after the car chase? I don't... I think that they were on a seat. So I'll concede, after the robbery, Mr. Davis certainly knew there were firearms around. There's no question about that. Right. But if we can assume that they arrived in the getaway car, that's a logical assumption. Sure. Stolen car. And that they leave in the getaway car and there's a chase and they're immediately found with two guns in the car. And if they're in plain view, they would have been obvious to your client. And although he didn't carry one into the robbery, that's very powerful evidence that he knew this was going to be an armed robbery and not just a fake armed robbery. Right. But all of that is after the fact evidence. And I'll look at this when I sit down. My recollection is that the guns were found with the money. It was found in the bags that were used to collect the money. So it's not like they were already in those bags when it's just sitting in the car. Obviously Mr. Haslip carried in a firearm, but we don't know. We just don't know. And the question on this innocent standard is whether a jury would find beyond a reasonable doubt that there was advanced knowledge. If it's just are there inferences the jury could make under his efficiency, the evidence standard, I think that's a very difficult hill to climb. But the question is beyond a reasonable doubt, did the government establish that Mr. Davis had advanced knowledge of this firearm? Do we know anything about their relationship? We know that they were in prison together. Okay. Okay. Juries use common sense. Right. But the question is not whether he wanted to commit a bank robbery with them. He absolutely is guilty of the bank robbery. The question is whether he knew that it would be an armed bank robbery, and you need evidence of that. Not just inferences about, oh, well, he probably knew because Haslip had a firearm after the fact. The question is before the fact, did he have advanced knowledge? And the government did not prove that. They maybe felt they didn't have to given the current law. The state of the law in the Tenth Circuit. Right. But the government hasn't introduced new facts. On an innocence claim, the government can bring in new facts if they think, well, we didn't present this before, but now we have this evidence that is relevant. They haven't done that here. So there's just no evidence, and that beyond a reasonable doubt standard means something in the innocence standard. So I'll reserve the rest of my time for thinking. Wouldn't Haslip have to have told Davis that he had a gun? Otherwise, Davis wouldn't know what they were going to do. No. I don't think that's true. What Davis has been consistent in saying in this petition was that he believed this was going to be a note robbery. Well, did Haslip tell him that it was just going to be a note robbery? What did Haslip tell him? There's no evidence of what Haslip told him. No, but he must have heard what Haslip told him or didn't tell him, Davis. Right. And Davis did not testify. Haslip lied at trial and said he wasn't even there. What I would say is the fact that he met in prison, one of the things I've observed, this is not in the record, of course, but is this method of committing bank robbery. There's a pretty set method when criminals get together and say, yeah, you just go in, you say we're robbing the place, and they give you money. That's their protocol, and then they'll do the silent alarm later. There's not this need that you and I might perceive of coercing them into giving you money because their protocol is, yeah, they demand money, you give it over, you don't. Well, what I just find hard to believe is that Haslip would not have explained to Davis the nature of the robbery. You tell him, we'll just give him notes. We'll give the tellers notes. They're just the two tellers. We'll each give them a note. Or I have a gun, and that'll guarantee our success. Yeah. The reason I think you can't assume that as a matter of law is that then there's no need for the Roseman decision. Is that what? As a matter of law, there's no need then for the Roseman decision, because if there's an armed robbery, an armed drug deal, an armed anything, then under that view, the government could come in and say, well, of course they discussed what was going to happen. Of course they said I'm going to have a gun at this encounter. And then there would never be a Roseman question because it could be assumed that, well, they must have met before now. So I think the standard's a little higher than that. I think that we can't use that inference alone. Did Davis present any evidence? I don't believe he did. I can check that again. Obviously it was ineffective. But the defense at trial was alibi, was essentially our identity, rather. It was not us. We weren't there. Thank you, Your Honor. Okay. Well, thank you, Mr. Henderson. Ms. Hudson? May it please the Court. Counsel. I'm Jennifer Hudson, Assistant United States Attorney. Could you speak up a little? Yes. I'm sorry. Does this help? No. No. I'm sorry. Okay. They don't amplify. You have to speak a little louder. Okay. In the United States Supreme Court opinion in Roseman, the Court wrote that what criminals should not expect is the capacity to hedge their bets when a gun is brought into an armed robbery or a drug transaction. It is the United States' position that that is exactly what Mr. Davis is doing in this case. He should have either made a decision to go along or to have folded. Here, what he's trying to do is hedge his bets. Roseman basically said that Mr. Davis is required to know in advance that an armed robbery is going to occur, and the United States is bound to show that to the jury. We are looking at this in a 2241 situation. In looking at the facts that were available to the jury and to the magistrate court, we are looking at the opinions that were written by the Tenth Circuit and also added through the transcript the following facts. First and foremost, when Haslip entered the bank, he entered with Mr. Davis. That evidence came from Ms. Anderson, who testified that she saw them both walk past her window. They came in. Mr. Davis went to the first teller and asked for change for a $10 bill. Then Mr. Haslip stood out, pointed a gun, and demanded money. At that point only did Mr. Davis step around the teller stand, bring out his plastic bag, and ask for money. So Mr. Davis did have an opportunity to withdraw from the robbery when Mr. Haslip withdrew his weapon and demanded money. He did not. Under Rosemond, we met the burden necessary. He had an opportunity to withdraw and didn't. He is not entitled to hedge his bets. So he didn't show the teller a note? He did not. He handed her a $10 bill. After that time, Ms. Ashenforth testified that within the transcript listed at the top there are several of the case numbers listed, but it says case 15-3681, document number 22-2, filed on 2-7-2017, page 74, lines 10 through 12, Ms. Ashenforth testified that Mr. Davis instructed her to go to the vault. At no time did the Tenth Circuit say that Mr. Davis pushed or shoved or escorted. He just told Ms. Ashenforth to get into the vault, or words to that effect. The magistrate judge repeated that, and so did the United States in its brief, because that's the testimony Ms. Ashenforth gave at trial. Hayslip did order Anderson and Burt into the vault. As this court has already noted, Hayslip and Davis entered and left the bank together. Also indicative that the plan happened before and they carried it out, they gave the same phone number, and interestingly, that phone number had an area code of 573. This robbery occurred in Kansas. That area code is a Missouri area code. These individuals, Davis is from Springfield, Missouri, Hayslip is from Joplin, Missouri, and those come from pages 360 and 357 of the transcript, so we know that they traveled some distance in order to arrive at this location to commit this robbery. Did Davis know that Hayslip was a murderer? I don't have any direct information. He did not testify to that at trial, Your Honor. I would be guessing. They arrived and left together. The crime started again after Davis pulled the weapon. There were, as the court noted, two guns that were found after the stolen brown Ford probe wrecked on the O'Dell farm. The two bags, the blue bag and the white bag with the money and the two guns were tied together, showing that one person or both put it together, tied it up, and they were making their getaway to get out of the area. These individuals were acting in concert. The standard, again, is the petitioner does not meet the threshold requirement unless he persuades the court that upon receiving proper instructions, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt. In this case, there is plenty of facts for a jury to find that Mr. Davis knew or had an opportunity to withdraw from an armed robbery. I respectfully request that this court uphold the lower court's decision. If there aren't any other questions, Your Honor, thank you. Okay, thank you, Ms. Hudson. Mr. Henderson? So, Mr. Henderson, what I think dooms your case is that, if I understand correctly, Davis did not hand a note to the teller, to his teller. He just said, give me the money. Now, the only basis on which he could be intimidating her was that Haslam had pulled a gun. Well, again, what is sort of common knowledge among criminals is, as long as you make a demand for money, it can be written, it can be oral, that the tellers are going to comply. Now, as the government described it, they can see both teller stations. No, they're not. If you walk up to a teller and say, give me $1,000, she'll just laugh at you. Now, if you hand her a note which says, give me $1,000 or I'll shoot you, yes, then she'll comply. But he didn't do any of that. All he said was, give me the money. And what he was relying on was the fact that she knew that his companion had a gun. There's nothing else that would have induced her to give him any money. I don't think that's true. And unfortunately, it's not testable because... No, it's not. It is true. You don't go up to a teller and say, give me $1,000. You have to have a threat behind that.  But he didn't give her a note. He didn't have to because his pal, Haslip, is standing next to him with a drawn gun pointing at another teller. That's all you need for intimidation. But you need that. He doesn't have any alternative mode of intimidation. I don't think that's true. Well, you tell me why it's false. Because in my understanding, and I can try to find some cases, but the fact that somebody comes up to a teller and says, give me $1,000 in a demand with nothing else can constitute the crime of bank robbery because there is an implied intimidation there. There is an implied or else. Are there cases like that? I certainly think so. I'll try my best to find one for you. I would think the teller would think he was joking. Well, this is, again, I think for teller safety, they are trained that somebody does this and it's not a joke. Then you just comply. You don't take chances. You don't say, well, what are you going to do, shoot me? You don't say that. You hand over the money. But I'll try to find a case where they show that. But now when he says to give me the money, he knows Haslip has pulled a gun. They're standing next to each other. No, they're not. They're at different teller stations. Well, I thought these two tellers are right next to each other. It's a little bank that just has two tellers. Right. So here's what I'll say. There's no evidence that they knew that Davis was looking at Haslip or that he knew that Haslip had pulled a gun. There's just not record. There's not evidence. Well, right. But as soon as the gun is drawn and brandished, he's behind the counter. Right. He's already behind the counter. Right. Right. So he started this robbery prior to the gun being brandished. I thought it was at the same time that it was suggesting coordination. Right. Well, you know, there's It all happened at the same time. There are a number of inferences that on sufficiency of the evidence review, I think the court could say, yeah, there's enough here for the jury to make inferences. But there's not evidence beyond a reasonable doubt where a jury would find that Mr. Davis had advanced knowledge of this firearm. It came out at the beginning of the robbery, but Mr. Davis had already initiated his part. But as I understand the Schlepp standard, you've got to show that a reasonable jury would find reasonable doubt on this record. That's right. That's right. Assuming reasonable jurors. That's right. And we think, again, we don't think that there's enough evidence here to show that advanced knowledge. And the last thing that I'll say, if I can, there's. Mr. Davis didn't present any evidence, right? No, that's right. Because it's the government's burden to prove it. But he had a different defense because he couldn't rely on this sort of defense. He said I wasn't there. He said he wasn't there? Right. Yeah. Well, no wonder he was convicted. Right. Exactly. Thank you. Unless there are further questions. Okay. Well, thank you very much, Mr. Henderson and Ms. Hudson.